UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | No. 2:05-CR-100 |
| ) | |
| RICHARD MILBURN ) | |

## **REPORT AND RECOMMENDATION**

Defendant has filed a motion to suppress all evidence seized as a result of a search warrant issued by this court on November 30, 2005, authorizing the search of defendant's residence in Greene County, Tennessee. (Doc. 207).[1] This motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636.

The thrust of defendant's argument is "staleness." Defendant argues that the information in the affidavit was stale, and therefore could not constitute probable cause for the issuance of the search warrant. In this regard, defendant argues that some of the information in the affidavit was a year old, and one of the informants mentioned in the affidavit had been in custody for over a year as of the date of the supporting affidavit.

The applicant and affiant was Special Agent Kevin Keithley of the Federal Bureau of

---

[1]The motion itself refers only to the apparent lack of signature and oath of the applicant before the judicial officer. That is identical to another motion filed by defendant, which long ago was addressed by the court. The instant motion, as evidenced by the supporting brief, was intended to raise the issue of "staleness." Therefore, the subject matter of this motion to suppress should be gleaned from the supporting brief, not the motion itself.

Investigation. He applied for the warrant on November 30, 2005. He pointed out in his affidavit that he had been involved with other state and federal law enforcement agencies since October 2003, in a joint investigation of Mark Saults and Richard Milburn. He first notes that a search warrant was executed on September 8, 2004, at a motel room in Marietta, Georgia, occupied by defendant, defendant's wife, Troy Ward, and Ward's wife. During that search, the executing agents seized 36 grams of crystal methamphetamine, as well as over $16,000.00 in U.S. currency and 2 loaded handguns on defendant's person.

Keithley's affidavit recites that on December 22, 2004, Troy Ward confessed to FBI agents in Atlanta that he and the defendant were attempting to purchase 113 grams of crystal methamphetamine for ultimate distribution in East Tennessee. On March 3, 2005, Troy Ward was again interviewed, and he confirmed what he told the FBI agents in the preceding December. Ward told the FBI agents that Mark Saults had been distributing 100-pound quantities of marijuana, multi-kilogram quantities of methamphetamine, and multi-pound quantities of crystal methamphetamine, and that it was Saults who introduced Ward to the defendant Milburn. Ward advised that from 2001 to 2003 he personally observed Milburn obtain distribution amounts of drugs from Saults, including 30 to 60 pounds of marijuana every month, and at least 1 kilogram of cocaine on one particular occasion.

On February 23, 2005, a Rule 11(e) interview was held of Scott Matsuda, convicted in this court on August 7, 2006, for drug offenses. Matsuda related that he and another individual supplied defendant with 2 to 3 pounds of methamphetamine over a 5-month period beginning in October 2003.

Similarly, on February 23, 2005, Agent Keithley conducted a Rule 11(e) interview of Amanda Martin, also previously convicted in this court for a drug offense. Martin stated that she had known Milburn for 18 years, and that from October 2003 to October 2004 she had purchased marijuana and methamphetamine from Milburn. Amanda Martin also told Agent Keithley that she had been in Milburn's residence on numerous occasions, and that she knew that Milburn stored marijuana in a freezer located in his basement. Martin also told Agent Keithley that in July or August 2004 Milburn told her that he needed to sell some marijuana in order to raise $25,000.00. Martin advised Keithley that defendant's wife complained to her that Milburn could stand all night on a concrete floor breaking up marijuana, notwithstanding that he was receiving disability checks. Agent Keithley's affidavit recites that Martin told him that on September 6, 2004, she was at defendant's residence and observed him carrying a box in which she saw marijuana and hallucinogenic mushrooms.

Bearing in mind that Agent Keithley did not apply to this court for the issuance of a search warrant until November 30, 2005, all the foregoing information was a year or more older at the time of the application. All other considerations aside, it is agreed that the information was "stale." However, that information was merely background or history to the more current information which Agent Keithley supplied to the magistrate judge. The essence of that background or historical information clearly established that Mr. Milburn was a long-time and significant drug dealer in upper East Tennessee. The more current information with respect to defendant starts with paragraph 12 of Agent Keithley's affidavit. Agent Keithley recites that he conducted a Rule 11(e) interview of Thomas Turner on

3

October 17, 2005. Turner told Agent Keithley that from 1994 until March 2003 he supplied Mark Saults with an incredible amount of marijuana, methamphetamine, and crystal methamphetamine. A few days later, on October 25, 2005, Turner cooperated with law enforcement and met with Mark Saults at Saults' residence in Limestone, Tennessee. During that audio-taped meeting, Saults confirmed his past relationship with Turner, and told Turner that he again wished to purchase marijuana and crystal methamphetamine. In that conversation, Saults told Turner that he was then distributing approximately 100 pounds of marijuana per month, but "the hottest thing going is crystal methamphetamine." Notably, Saults told Turner that his purchase of crystal methamphetamine would be financed or underwritten by Richard Milburn.

On November 12, 2005, again in a recorded conversation between Saults and Turner, Saults stated that there were two individuals to whom he intended to supply crystal methamphetamine, and those two individuals were going to supply the money to pay Turner for the drugs when they arrived in East Tennessee. One of those individuals was described by Saults as "dairy man," a nickname known to Agent Keithley to be used by the defendant Milburn. Significantly, Saults stated that "dairy man" had a trial date in Cobb County, Georgia on December 12, 2005, and that "dairy man" was represented by attorney Jimmy Berry. Agent Keithley subsequently confirmed with the district attorney's office for Marietta, Georgia that the defendant Milburn indeed did have a trial date in Georgia for December 12, 2005, and that he was represented by attorney Jimmy D. Berry.

On November 19, 2005, Thomas Turner, continuing to cooperate with the FBI,

4

participated in several recorded telephone conversations with Saults, during which Saults referred to the defendant Milburn and Milburn's desire to purchase 1 pound of crystal methamphetamine.

On November 21, 2005, Agent Keithley conducted a Rule 11(e) interview of Michael Turner, the brother of Thomas Turner. Michael Turner stated that he was told by Mark Saults as early as 2001 that his financier or "money man" was Richard Milburn. On November 28, 2005, Thomas Turner cooperated with law enforcement agents and participated in two recorded telephone conversations with Mark Saults. Saults confirmed that "milk man" had a court date in December, and that he would provide Saults with the purchase money for the drug transaction which was to occur on December 1, 2005.

Coupled with the historical or background information discussed earlier, the more current information regarding Richard Milburn's drug trafficking provided overwhelming probable cause to support the issuance of a search warrant for his residence. The information learned by Agent Keithley in October and November 2005 was within a month or two of the date he applied for the search warrant. "Staleness is not determined by some reference to an arbitrary time limitation, but rather depends upon the nature of the crime, the criminal, the place to be searched, and the thing to be seized." *See, e.g., United States v. Spikes*, 158 F.3d 913, 923-24 (6th Cir. 1998). Even when some of the information in an affidavit is stale, probable cause still may be established if the information relates to protracted or continuous conduct, or the "stale" information is corroborated by recent information. *See, e.g., United States v. Henson*, 848 F.2d 1374, 1381 (6th Cir. 1988). "Evidence of ongoing criminal

5

activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001). Bearing in mind the nature of the drug trafficking business and the recitations in the affidavit of defendant's long involvement therewith, it was reasonable to believe that evidence of drug trafficking would be found in defendant's house at the time Agent Keithley applied for the search warrant. Moreover, the information upon which this magistrate judge actually relied in issuing the search warrant commences with paragraph 12 of the affidavit, with the preceding paragraphs only as necessary background information. In other words, the information in reality was not stale at all.

It is respectfully recommended that defendant's motion to suppress be DENIED.

Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). If a party files objections to this report and recommendation, the attorney for that party shall provide a copy of such objections to the opposing counsel on the same day the objections are filed, either by hand-delivery or facsimile transmission. The opposing counsel shall file his/her response to the objections within five business days of the date the objections are filed.

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge