RICHARD MILBURN, )
)
    *Petitioner*, )
)
v. )    No. 2:10-cv-66;2:05-cr-100
)    *Judge Jordan*
UNITED STATES OF AMERICA, )
)
    *Respondent*. )

## **MEMORANDUM OPINION**

Petitioner Richard Milburn ("Petitioner" or "Milburn") has filed a *pro se* motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255, an amendment to his motion, and a brief in support of the motion, (Docs. 477, 479, and 481).[1] The United States has filed a response in opposition and petitioner a reply, (Docs. 495-96). For the reasons which follow, the § 2255 motion to vacate will be **DENIED**.

### I. **Standard of Review**

Title 28 United States Code section 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so

---

[1] All citations to the record refer to Milburn's criminal case file (Criminal Number 2:05-cr-100).

fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

Petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings, *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), and he likewise bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. A § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thereby fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

An evidentiary hearing is unnecessary if there are no material issues of fact in dispute or if the record conclusively shows that petitioner is not entitled to relief under § 2255. The Court finds that, based on the following discussion, no evidentiary hearing is required.

## II. Procedural Background

On August 8, 2006, following an indictment and a superseding indictment, the federal grand jury returned a second superseding indictment charging Milburn with eleven criminal drug-related and firearm offenses, (Doc. 284).[2] At the close of a two-day trial on December 11-12, 2006, Milburn

---

[2] The latter indictment alleged: conspiracy to distribute and to possess with the intent to distribute at least 100 kilograms of marijuana, a violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B) (Count One); conspiracy to distribute and to possess with the intent to distribute over 500 grams of methamphetamine, a violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) (Count Two); conspiracy to distribute and to possess with the intent to distribute 5 or more kilograms of cocaine, a violation of 21 U.S.C. § 841(a)(1)(Count Three); attempt to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Counts Four); carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (Count Five); attempt to possess with the intent to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(D) and 18 U.S.C. § 2 (Count Six); attempt to possess with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and 18 U.S.C. § 2 (Count Seven); possession with the intent to distribute

was convicted of all counts, save Count Three, which was dismissed upon motion of the government, (Doc. 454). Thereafter, the Court issued a judgment, imposing a 480-month prison sentence (120-months concurrently on Counts 1, 2, 4, 7, 8, and 10; 60 months concurrently on Counts 6 and 11; 60 months on Count Five, consecutively to all other terms; and 300 months on Count 9, consecutively to all other terms), (Doc. 452). Milburn filed a direct appeal, but the judgment was affirmed. *See United States v. Milburn*, 298 Fed. Appx. 455, 2008 WL 4646899 (6th Cir. Oct. 21, 2008). The U.S. Supreme Court denied Milburn's petition for a writ of certiorari, *Milburn v. United States*, 129 S. Ct. 1648, 173 L. Ed. 2d 999 (2009), and he filed the instant § 2255 motion on March 22, 2010, (Doc. 477, Ex. 1 at 5).

### III. Factual Background

The summary of the underlying facts is taken from the Sixth Circuit's opinion issued during Milburn's direct appeal. *Milburn*, 298 Fed.Appx. 455, 456-57, 2008 WL 4646899, *1.

Milburn's convictions arose from two somewhat independent series of events, which were connected to the operation of a narcotics-dealing organization. Milburn's dairy farm in Greene County, Tennessee, served as a storage and distribution center for the drugs. Milburn was arrested at a Georgia hotel on September 8, 2004, and nearly fifteen months later, at a Tennessee service station.

In the first arrest, Milburn traveled to Georgia from Tennessee, carrying cash to purchase methamphetamine from a contact of co-defendant Troy Ward's. Ward had used drugs at Milburn's

---

methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count Eight); carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (Count Nine); possession of an unregistered short-barrel shotgun, a violation of 26 U.S.C. § 5861(d) (Count Ten); and possession of marijuana as a federal inmate, a violation of 18 U.S.C. § 1791(a)(2) (Count Eleven).

home and he was also involved with a Mark Saults, an associate and another co-defendant of Milburn's. Saults had purchased methamphetamine from Milburn and had sold marijuana to Milburn. In September of 2004, Milburn asked Ward to buy methamphetamine in Georgia from a drug dealer Ward knew only as "Julio" and to bring the drug back to Tennessee. Milburn met Ward in Baileyton, Tennessee, which is located in the Eastern District of Tennessee, where he gave Ward $5,400 in cash for the methamphetamine and $100 to pay for gas. That night, Ward took the money to Georgia and gave Julio $4,200 of that sum to buy ¼ pound of methamphetamine. Julio took the money, but he did not return. Ward then called Milburn, explained what had happened with Julio, and indicated that he had located another source for methamphetamine. Milburn traveled to Georgia from Tennessee with $10,000 to $12,000 in cash to buy methamphetamine from Ward's source and met him at a hotel, where they were arrested.

The search of the hotel room and of Milburn's person netted 37.25 grams of methamphetamine, a sum of cash, three guns, and a set of digital scales. The Georgia episode furnished the basis for the methamphetamine charge in Count Four and the firearm charge in Count Five.

The Tennessee arrest occurred on December 1, 2005, when Milburn and Saults met Thomas Turner, a former narcotics trafficker turned police informant, to transact a drug deal at a service station in Boones Creek, Tennessee. Turner had arranged to sell methamphetamine and marijuana to Saults, but Saults did not have the money to make the purchase, so Milburn agreed to buy the drugs. Saults intended to sell part of the drugs, repay Milburn from the proceeds, then split the profit between them. When Milburn and Saults arrived at the designated meeting location, Turner signaled to the police, who were waiting on the sidelines, and Milburn and Saults were arrested. A subsequent search of Milburn and his pickup truck uncovered methamphetamine, tens of thousands

4

of dollars in cash, two guns, digital scales containing drug residue, a methamphetamine pipe, methlsulfonal monohydrate (used to dilute methamphetamine), and a drug ledger. Counts Counts 7-9, involving two methamphetamine charges, a marijuana charge, and a firearm charge arose out of the events which occurred at the Boones Creek gas station.

### III. Law and Analysis

In his § 2255 motion, Milburn maintains that the prosecutor engaged in misconduct and that he received ineffective assistance from his trial and appellate attorneys, during the pretrial, trial, sentencing, and appellate periods. Milburn's memorandum brief contains a later-arising claim involving his § 924(c) firearms offenses, relying on a decision issued by the Sixth Circuit after his direct review proceedings were concluded.

#### A. Instances of Prosecutorial Misconduct

1. False Testimony

In this claim, Milburn first asserts that the prosecutor knowingly presented false testimony when Saults testified at trial that Milburn was the "money man" in the conspiracy and that he had given Saults the cash found in Sault's possession (some $36,000.00) during his arrest, (Doc. 477 at 31-34, Doc. 481 at 16). The theory underlying this claim is that Saults asserted ownership over the currency by virtue of a provision in Saults' plea agreement, whereby he forfeited this sum of cash in exchange for the government's motion for a reduced sentence, and that (by implication) Sault's acknowledged ownership and forfeiture of the cash severed any connection between Milburn and the cash. Also, according to Milburn, he (Milburn) was not served with a forfeiture notice and his indictment contained no allegation concerning this currency.

As the United States correctly argues in its response, Milburn did not raise this issue in his appeal. A claim not presented on appeal when it could have been presented may not be reviewed

in a § 2255 motion, absent a showing of cause and actual prejudice to excuse a failure to raise the claim previously. *Bousley v. United States,* 523 U.S. 614, 619 (1998); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Petitioner could have raised his claim at trial or on direct review, and has offered nothing to demonstrate cause for his failure to do so or any ensuing prejudice. Without a showing of cause and prejudice flowing the alleged constitutional violation, this claim will not be reviewed due to Milburn's double procedural default. *Bousley,* 523 U.S. at 619; *Elzy*, 205 F.3d at 884.

Even if this claim qualified for review, Milburn could not prevail on it. To establish a due process violation by the prosecution's knowing use of false testimony, a petitioner must show that the statement 1) was actually false, 2) material, and 3) known to be false by the prosecution. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted). Milburn has presented a novel legal argument to undermine Saults' testimony, but he has offered no historical facts to show that Saults' statements concerning the source of the $36,000 or Milburn's role in the conspiracy as the money man were actually false. Without any substantive demonstration that the questioned testimony, in fact, was not true, petitioner's claim falters.

Petitioner next alleges that Cobb County Police Officer Mays gave testimony which was false and was knowingly and intentionally presented by the government, (Doc. 481 at 16). This claim is bottomed on the allegation that the officer's testimony at trial varied from information written in a police report, (Doc. 477 at 34-36).

This issue was not raised at trial or on appeal and, as in the previous claim, is barred from review by Milburn's double procedural default. *Bousley,* 523 U.S. at 619; *Elzy*, 205 F.3d at 884. Even if the assertion were not procedurally precluded, Milburn has offered no facts to show that the officer's testimony was false, let alone that the prosecution knew it to be false and submitted the

6

false testimony nonetheless. After all, "the fact that a witness contradicts h[im]self or changes h[is] story does not . . . create an inference, let alone prove, that the prosecutor knowingly presented perjured testimony," *Bucci v. United States*, 662 F.3d 18, 40 (1st Cir. 2011), and "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *Lochmondy,* 890 F.2d at 822. And much to the point, "[a]n imperfect witness is not the same thing as a 'false' witness"). *Flowers v. City of Detroit*, 306 Fed.Appx. 984, 988, 2009 WL 113786, *3 (6th Cir. Jan. 16, 2009).

## 2. Selective Prosecution

As the second illustration of prosecutorial misconduct, Milburn asserts that he was subjected to gender-based prosecution since two women involved in the Georgia case were charged in state court, but not in federal court. As in the previous claim, the respondent maintains that Milburn did not offer the claim in his direct appeal and, thus, has committed a procedural default. Indeed, as noted in the discussion of the prior claim, he did not assert his claim before the trial. *United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) (holding that a failure to make a motion based on selective prosecution before trial waives the issue). A claim which could have been but was not raised in earlier proceedings has been procedurally defaulted. No cause and prejudice has been alleged and Milburn's unexcused double procedural default bars collateral review of his selective prosecution assertion. *Bousley,* 523 U.S. at 619; *Elzy*, 205 F.3d at 884.

But again, if review of the claim is appropriate, Milburn would not deserve relief. The equal protection clause of the Fifth Amendment bars prosecution based "an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong,* 517 U.S. 456, 464 (1996). To succeed on a selective prosecution claim, a defendant must show two elements: that the federal prosecutorial policy had 1) a discriminatory intent and 2) a discriminatory effect. *Id*. at 463-

7

465; *United States v. Jones*, 159 F.3d 969, 976-77 (6th Cir. 1998). The first element is illustrated by evidence of class-based animus and the second by proof that similarly situated individuals were not similarly prosecuted. *Jones*, 159 F.3d at 977. In evaluating this extremely rare type of claim, there is a presumption that a prosecutor acted lawfully, though "clear evidence"to the contrary can rebut the presumption. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 489 (1999) (citing *Armstrong*, 517 U.S. at 463-465).

At the outset of this analysis, it is unclear whether petitioner has offered a valid claim in the first place, since he asserts gender-based prosecution with respect to only two counts, but does not assert that his entire prosecution on a multi-count indictment was grounded impermissibly on his gender. After all, the goal of making a claim of selective prosecution is dismissal of the indictment. *See United States v. Jones*, 399 F.3d 640, 643 (6th Cir. 2005) ("If Jones is able to obtain evidence that establishes a *prima facie* case of discriminatory effect, Jones may renew his motion to dismiss the indictment.").

But if petitioner's claim is legitimate, he has offered no evidence to satisfy the second element, i.e., that similarly-situated females were not recommended for federal prosecution. His only argument is that the two women were given "sweetheart deals" or were allowed to "plead out" in the Georgia state courts. Yet, Milburn has not suggested that the females involved in the Georgia episode had firearms, as he did, or that the amount of drugs with which they were associated approached the amount of illicit substances with which he was charged. *See id.* at 646 (observing that factors to consider include "propensity for violence, involvement of a firearm, and amount of cocaine base"); *see also United States v.Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) (holding that defendants are similarly situated when there are no "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them"). Furthermore,

8

petitioner has not noted a distinction between the sovereign who prosecuted him (i.e., the United States) and the one who prosecuted the females (i.e., the State of Georgia).

Barring any production of facts to support the discriminatory-effect element of this selective prosecution claim, the Court cannot draw an inference that the government chose to prosecute Milburn on the basis of his gender. He, therefore, has no viable constitutional claim.

3. Spillover Evidence

Milburn next challenges the manner in which the prosecution chose to indict him and present evidence against him, arguing that the offenses were not charged or proven in chronological order, according to the dates the crimes allegedly were committed. Petitioner insists that evidence supporting the offenses arising in Georgia should have preceded proof of the counts stemming from the events at the gas station in Tennessee and should have ended with evidence of the offense charging drug possession in jail. (Petitioner also notes, in passing, that the latter charge was misjoined with the other charges in the indictment, but more about this later.) Milburn takes the position that the evidence presented on the counts arising in Tennessee had a spillover effect on the counts predicated on the Georgia episode, which misled the jury and deprived him of a fair trial.

As in the prior two claims, Milburn did not raise this claim at trial or on direct appeal and, thereby, has committed a double procedural default, which forecloses collateral review. But even if there were no procedural default, neither allegation states a constitutional violation. First of all, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). The United States was not required, either by the Constitution or any other controlling rule, to seek an indictment on any criminal count, according to the chronology of the crime.

9

Secondly, the right to a fair trial as guaranteed by the Due Process Clause is violated when false evidence is knowingly used to obtain a criminal conviction, *see Napue v. Illinois,* 360 U.S. 264, 269 (1959) or when material, exculpatory evidence is suppressed by the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). However, the prosecution has the discretion to conduct entire *trials* out of chronological order to the times the offenses were committed, without infringing on a criminal accused's due process right. *See Sutton v. Bell,* 683 F.Supp. 2d 640, 724 -725 (E. D. Tenn. 2010). By logical extension, unless the government trammels on the Constitution or violates federal evidentiary or criminal procedural rules or some separate statutory right, it is free to structure the presentation of its evidence to the jury as it sees fit. As the United States points out in its response, the government is "entitled to prove its case by evidence of its own choice." *Old Chief v. United States,* 519 U.S. 172, 186 (1997). The Court agrees that "[i]t would be a rare day when federal prosecutors must reveal and justify a chronology of their judgment calls to the defense or the Court." *United States v. Herrera,* 2011 WL 684231, *2 (N.D.Cal. Feb. 16, 2011).

4. Opening Statement

Milburn faults the government's attorney for identifying himself, during his opening statement, as the representative of the people of the Eastern District of Tennessee. Milburn failed to make this challenge at the trial or on appeal, and as noted above, this constitutes a double procedural default, which now bars the claim from collateral review. Even if a procedural default did not stand in the way of review, the claim is a non-starter.

To establish a prosecutorial misconduct claim, a two-pronged test applies. *United States v. Carter,* 236 F.3d 777, 783 (6th Cir. 2001). The Court must first determine whether the comment was

improper, and if so, whether the improper remark was sufficiently flagrant to warrant relief. *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006).

Milburn's claim fails on the first prong, since the prosecutor's statement that he represented the people of the Eastern District of Tennessee was not improper. The Supreme Court and the Sixth Circuit have described the role of the federal prosecutor as the representative of the people of the United States. *See, e.g., Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty [referring to the United States][.]"); *United States v. Galloway*, 316 F.3d 624, 639 (6th Cir. 2003) (Clay, J., dissenting) (describing a U.S. Attorney as the representative of the people of the United States) (citing to *United States v. Best*, 593 F.2d 755, 749 (6th Cir. 1979)); and *United States v. Robinson*, 794 F.2d 1132, 1135 (6th Cir. 1986) (referring to the prosecutor's "special position as the representative of the people [of the United States]"). The United States is comprised of fifty states; Tennessee is one of those states; and encompassed within the category of "the people of the United States" are "the people of the Eastern District of Tennessee." Milburn's last prosecutorial misconduct claim, based on a semantic distinction without a difference, is completely groundless.

## B. Ineffective Assistance of Counsel

The Supreme Court has established a two-part test for determining when assistance of counsel in ineffective. *See Lockhart v. Fretwell*, 506 U.S. 364, 376-79 (1993); *Strickland v. Washington* 466 U.S. 668, 686-87 (1984). First, a petitioner must show that his counsel's errors were so egregious as to render counsel's performance constitutionally deficient, that is, outside the "wide range of professional assistance. *Id.* at 687; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct

11

occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. In order to show that counsel's performance was deficient, a petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

Second, a petitioner must demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 690, 694. Because Milburn is seeking relief under § 2255, he bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). When a petitioner's ineffectiveness claim involves alleged sentencing errors, he must demonstrate that there is a reasonable probability that, but for counsel's errors, his sentence would have been different. *Weinberger v. United States,* 268 F.3d 346, 352 (6th Cir. 2001).

For ease of discussion, the Court has renumbered some claims and grouped similar ones together.

1. Pretrial Errors

    a. *Motion to Sever* (Doc. 477 at 3, Doc. 481 at 3-5)

Petitioner asserts that trial counsel should have moved to sever Count Eleven from the other counts to be tried because it was highly prejudicial and also a misjoinder under Rules 8(a) and 14(a) of the Rules of Criminal Procedure. Milburn reasons that this specific offense was misjoined in the indictment because it involved neither a conspiracy or distribution charge but, instead, a basic charge of marijuana possession in prison. The United States responds that Count Eleven was properly alleged in the indictment because that count was similar in character to Milburn's other drug-

trafficking offenses and was part of a continuing pattern of petitioner's unlawful drug-trafficking activity. Respondent also argues that, in any event, there was no actual prejudice as a result of counsel's omission.

### i. Joinder

Rule 8(a) of the Federal Rules of Criminal Procedure allows two or more offenses to be charged in a single indictment if (1) they are of the same or similar character, or (2) are based on the same act or transaction, or (3) are connected with or constitute parts of a common scheme or plan. The word "'similar' does not mean 'identical,'" *United States v. Melendez*, 301 F.3d 27, 35 (1st Cir. 2002), and the rule is to "be construed broadly to promote the goals of trial convenience and judicial efficiency." *Benson v. United States*, 2006 WL 840411, \*4 (E.D.Tenn. Mar. 29, 2006) (citing *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001) (internal quotation marks omitted).

Count Eleven charged possession of marijuana as a federal inmate; Counts One and Five alleged, respectively, a marijuana conspiracy and an attempt to possess to marijuana for distribution; and the remaining counts charged drug-trafficking (methamphetamine and cocaine) and firearms offenses. The firearms charges were connected to the drug-trafficking charges and were properly joined with the other offenses: Two charges arose from Milburn's possession of the firearms during his arrests in Georgia and Tennessee and one from discovery of a short barrel shotgun, as well as a quantity of drugs, during a search of his residence. *See United States v. Chavis*, 296 F.3d 450, 459 (6th Cir. 2002) (joinder appropriate "when the firearms charges and the drug charges are sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan, as when guns are used in connection with the drug offense or when both guns and drugs are uncovered in the same search") (internal quotation marks omitted). Though not

13

identical, Count Eleven was similar to the drug-trafficking offenses alleged in the second superceding indictment. *See id.* at 460-461 (where "all four counts involved illegal possession and sale of narcotics" the offenses were "of the same or similar character" and, thus, properly joined) (quoting *United States v. Reynolds*, 489 F.2d 4, 6 (6th Cir. 1973)). Because Count Eleven was sufficiently similar to be charged with the other offenses in the indictment, the Court would not have found it improperly joined and petitioner's assertion to the contrary is incorrect.

ii. Severance

Even where joinder is proper under Rule 8, separate trials may be warranted if, pursuant to Rule 14, a single trial would be prejudicial to the defendant. *Zafiro v. United States*, 506 U.S. 534, 538 (1993) ("Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government."). The prejudice which is engendered must be "substantial," *United States v. Redd*, 2002 WL 193928 (6th Cir. Feb. 5, 2002), and is not satisfied by bare allegations of prejudice. *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993) ("When a defendant seeks a severance, he has a heavy burden of showing specific and compelling prejudice.").

Milburn illustrates the prejudice which accrued by pointing to trial testimony presented to establish Count Eleven, which included the fact that Milburn remained in the jail where the marijuana was discovered during a shakedown. This testimony, according to Milburn, was prejudicial in that it deprived him of the presumption of innocence and impugned his credibility and that of his entire defense. Further, counsel did not request, and the Court did not give, a limiting curative instruction or one concerning the spillover effect of Count Eleven on the other counts. By allowing the jury to hear that Milburn was in jail, the jury presumed him guilty and quickly issued a verdict in accord with that presumption.

14

The United States argues that Milburn has not shown that he suffered any actual prejudice as a result of counsel's failure to seek to sever Count Eleven from the other counts because the Court instructed the jurors that, while Milburn had been charged with several offenses, they were required "to separately consider the evidence that relates to each charge and to return a separate verdict for each one."

Rather than grant a severance, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (citing *Richardson v. Marsh,* 481 U.S. 200, 211 (1987)). Furthermore, "a jury is presumed capable of sorting out evidence and considering each count . . . separately." *United States v. Swift*, 809 F.2d 320, 323 (6th Cir.1987).

At trial, the Court issued the following instructions:

[T]the defendant has been charged with several crimes.
The number of charges is no evidence of guilt, and
this should not influence your decision in any way.
It is your duty to separately consider the evidence
that relates to each charge and to return a
separate verdict for each one. For each charge,
you must decide whether the government has
 presented proof beyond a reasonable doubt that the
defendant is guilty of that particular charge.
Your decision on one charge,
whether guilty or not guilty, should not influence
your decision on any of other charge.

(Doc. 430, T. Tr. at 416, ll. 10-22).

Given the Court's instructions to the jury to consider the evidence adduced on each count and to return a separate verdict for each, along with the presumption that juries follow their instructions,

15

there was no prejudice which would have required a severance and counsel was not ineffective for failing to so move.

b. *Motion to Determine Competency* (Doc. 477 at 4-5, Doc. 481 at 5-7)

Counsel's next alleged pretrial shortcoming was his failure to file a motion to determine competency, despite Milburn's heavy drug and alcohol usage, 2003 suicide attempt, serious mental problems, and head injuries, suffered when he was riding a horse and was struck from behind by a car. Petitioner asserts that his mental problems were obvious, due to his lack of comprehension and understanding of the issues during conversations with counsel.

The United States counters that the record is devoid of any suggestion that Milburn lacked competency at the time of his arraignment and trial and that, moreover, his *pro se* pleadings indicate that he was able to comprehend the nature and consequences of the proceedings.

Milburn replied to the United States' response, reiterating the allegations in his pleading, claiming that counsel knew of the suicide attempt, which was occasioned by his major depressive condition and which required him to be airlifted to the hospital. According to petitioner, it is crystal clear that a person who has made a serious suicide attempt is not mentally sound and stable. In addition, petitioner contends that his pleadings were prepared by another inmate, one Henry Scott Baker, who has submitted a declaration that Milburn is incapable of preparing his own pleadings because of his obvious depression and his lack of legal knowledge and low comprehension skills. At any rate, petitioner maintains that a competency examination would have shown that he could not assist in his defense nor understand the nature and consequences he faced.

16

The test for competency is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). To establish that a defendant is not competent to stand trial the Court must find "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241. A court is only required to conduct a competency hearing where there is "substantial evidence of a defendant's incompetency." *Mackey v. Dutton*, 217 F.3d 399, 411 (6th Cir. 2000).

There is no indication in the record that Milburn was incapable of consulting with his attorney, understanding or comprehending any conversation between them, or that counsel had any basis for filing a motion for a competency evaluation. As to Milburn's depression and other unspecified mental problems, "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial." *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir.1984). Furthermore, in the interview with the probation officer who prepared the presentence report, petitioner characterized his 2003 suicide attempt as a "ten minute mistake" with the drug overdose and reported no current problems, (PSR at ¶ 64). Likewise, petitioner reported to the probation officer that he, occasionally, consumed beer and used methamphetamine on a daily basis until his arrest,[3] (*id.* at ¶ 64). At the sentencing hearing, the Court heard arguments concerning

---

[3] Following the arrest, Milburn was kept in pretrial detention until the date of his trial more than one year later. The Court assumes that Milburn did not use methamphetamine during that detention when he would have been conferring with his defense counsel.

Milburn's suicide attempt, methamphetamine addiction, accident and depression from the attorney who had replaced the trial counsel, (Doc. 457, Sentencing Hr'g Tr. at 12).

Thus, the Court was aware of all these things Milburn presents as evidence which should have led trial counsel to seek a competency evaluation, but finds that this evidence does not create a sufficient doubt as to petitioner's competency. Thus, the Court would not have held a competency hearing, even if counsel had so moved, and the counsel's failure in this regard did not result in any prejudice. Hence, counsel did not give Milburn ineffective assistance, since the alleged error resulted in no prejudice.

c. *Motion to Change Venue/Substitute Jury* (Doc. 477 at 6-9, Doc. 481 at 7-8)

In this claim, Milburn asserts that the amount and falsity of pretrial publicity contained in the area newspapers and broadcast on television tainted the jury pool and called for a change of venue or for selection of a jury from another district. Petitioner asserts that the acting U.S. Attorney stated in a press conference announcing his arrest that "[t]his has resulted in a dismantling of a major drug organization that I'm sure has its tentacles out into our homes and children throughout East Tennessee,"—a remark which was aired on local television news broadcasts and repeated in newspapers. He maintains that information published and aired about his case was inflammatory, prejudicial, and likely read and heard by the relatively small population in this district from which the jury pool would be drawn. On one occasion, counsel showed Milburn a newspaper article which prompted petitioner to comment that he could not receive a fair trial and to ask counsel how he would be able to select a jury from among people who had read the story. Petitioner alleges that his trial was utterly corrupted by the publicity, a fact which went unexplored during the jury voir dire,

18

but which should have caused counsel to move for a change of venue or to secure an out-of-district jury.

The United States responds that the most shown by the evidence Milburn has produced is that potential jurors may have been aware of his case, but that he has failed to establish that the media coverage of his case was atypical or resulted in a circus-like atmosphere which could have deprived him of a fair trial. Respondent suggests that the cited news articles and the acting U.S. Attorney's remark were not inflammatory and, by themselves, are insufficient to show the kind of publicity which justifies a change of venue. The government also maintains that the jury was properly instructed not to consider anything it had read or heard outside the courtroom and that nothing suggests that the jury disregarded its instructions. Milburn has replied and, not surprisingly, disagrees with respondent's postition, arguing that the ongoing publicity about his trial was not only inflammatory, but largely untrue and biased towards the prosecution.

Under Fed. R. Crim. P. 21(a), pretrial publicity justifies a transfer of venue where a court is convinced that prejudice is so great that a defendant cannot obtain a fair and impartial trial in the district where he is charged. The Constitution likewise protects a criminal accused's right to a fair trial, which is effectuated, under the Sixth Amendment, by impaneling a jury of impartial, "indifferent" jurors who render a verdict based on evidence adduced at the trial. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). To show that he has not been tried by an impartial jury, a petitioner must point to particular jurors actually selected to serve in his case who were prejudiced against him. A petitioner can show actual prejudice by showing that a juror had a fixed opinion about guilt and could not lay aside his opinion and render a verdict based on the evidence presented in court. *See Bell v. Hurley*, 97 Fed.Appx. 11, *19, 2004 WL 446224, *6 (6th Cir. Mar. 10, 2004) (unpublished

19

opinion) (citing to *Irvin*, 366 U.S. at 723)). However, a court will presume prejudice if a petitioner shows that his case falls within a narrow category of cases where the influence of the news media is such as to have created an inherently prejudicial environment. *Murphy v. Florida*, 421 U.S. 794, 798-99 (1975) (Prejudice is presumed where "a trial atmosphere . . . utterly corrupted by press coverage . . . has pervaded the proceedings."); *Ritchie v. Rogers,* 313 F.3d 948, 952–53 (6th Cir. 2002) (presumption of prejudice warranted "where an inflammatory, circus-like atmosphere pervades the courthouse and the surrounding community").

To illustrate his claim of actual prejudice, Milburn identifies Juror Yance, who, according to petitioner has two sons who are employed, respectively, as a DEA agent and a police Captain, and an unnamed juror, whose father was the Greeneville, Tennessee, Chief of Police. From these allegations, the Court infers that petitioner is claiming that these jurors were prejudiced. However, he has not connected any bias on the part of these two jurors to the media coverage of his case. Instead, Milburn attributes the alleged bias, by implication, to each juror's family relationships. A claim of prejudice stemming from media reports is different from one which rests on family relationships. The latter type of claim furnishes no basis to change venues. Suffice it to say, that Milburn has supplied no evidence that either juror had a fixed opinion about guilt in the first place, nor that the juror could not abandon that opinion and deliver a verdict based solely on the proof offered in court.

Milburn, seemingly, is claiming that prejudice could be presumed by virtue of the media coverage alone. The Supreme Court rejected a similar argument in *Dobbert v. Florida*, 432 U.S. 282 (1977), where it found that a petitioner who claimed that he was denied a fair trial because of broad media coverage could not demonstrate a constitutional violation merely by showing that the

20

community had extensive knowledge "of either the crimes or the putative criminal." *Id.* at 303. As the Sixth Circuit teaches, "[i]n the trial of a case involving a crime which attracts the attention of the press it is inevitable that some jurors will have some knowledge of the facts." *United States v. Gay*, 522 F.2d 429, 432 (6th Cir. 1975).

The cited articles and media coverage of petitioner's case were unkind to him, but they were not inflammatory and "contained no confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." *Skilling v. United States*, 130 S.Ct. 2896, 2916 (2010). Furthermore, as respondent suggests, the jury was properly instructed not to consider anything it had read or heard about the case outside of court and told to base its verdict only on the evidence and its instructions, (Doc. 450, T. Tr. at 39-40). As noted a jury is presumed to follow its instructions.

For all these reasons, petitioner has failed to meet the "high bar for allegations of juror prejudice due to pretrial publicity." *Skilling*, 130 U.S. at 2925. Neither the record nor the § 2255 pleadings supports a change of venue and, thus, counsel did not render a prejudicial performance in failing to so move. If a change of venue was not warranted, then likewise counsel cannot be faulted for failing to move that a jury be chosen out of the district. This claim of ineffective assistance has not been sustained by any proof.

d. *Motion to Sequester Jury* (Doc. 477 at 9, Doc. 481 at 8).

Counsel's next alleged error was in failing to move for jury sequestration to prevent the jury from being prejudiced by media attention while the trial was underway. Milburn does not make any supporting factual allegations to show the nature and extent of the publicity that occurred during his

21

trial or any actual or presumed prejudice. This claim lacks factual support and is facially insufficient to support a claim for relief under § 2255. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (vague and conclusory allegations contained in a petition may be disposed of summarily without further investigation by the district court); *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam) ( finding that a claim unsupported by proof or any reference to such proof is legally insufficient to sustain a review).

Moreover, the Court has already found that no prejudice was established and, without a demonstration that prejudice ensued from the publicity during the trial, there is no basis to find that a motion to sequester was warranted. *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1989) (a failure to show actual prejudice from media coverage is fatal to a jury-sequestration claim); *United States v. Johnson*, 584 F.2d 148, 155 (6th Cir. 1978) (no error in declining to sequester jury because "[n]o specific prejudice has even been alleged here, much less demonstrated").

Counsel has no duty to assert a legally baseless claim, *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and cannot be ineffective when he does not raise such a claim. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001).

e. *Plea Agreement (Counter Offer)* (Doc. 477 at 10-14, Doc. 481 at 9-10)

Milburn next contends that he was offered a deal to plead guilty to all counts with a sentence, as he remembers, of twelve and a half years—an offer which expired seven days later, though counsel, who was going out of town, gave him only six days to decide. Milburn alleges that his attorney was incompetent for failing to convey to the prosecution a counter offer that, in exchange for the dismissal of Count Three (the cocaine charge), petitioner would strongly consider and likely

22

take the deal offered. A few days following the expiration of the plea negotiation deadline expired, the government dismissed Count Three and Milburn claims that counsel should have checked to see whether the offer remained open and could be accepted after the dismissal of that count. Another error alleged in connection with the plea negotiations is that petitioner's attorney did not advise him that he could have accepted the deal only as to Count Eleven, going to trial on the remaining counts, or that, with respect to the conspiracy charge, all that had to be shown was that he was a participant in the conspiracy, regardless of whether or not he knew all of the individuals named in the indictment.

The United States, in its response, argues that petitioner is not entitled to dictate the terms of a plea offer or to plead guilty to anything less than the crimes charged against him. It insists, that by the terms of the plea deal, the offer had to be accepted within the seven-day deadline, that petitioner's attorney conveyed that fact to him, and that Milburn made the decision to reject the offer and go to trial. Moreover, respondent points out that Milburn has not shown that the government would have extended the same offer (or any other offer) at a later date. Nor, according to respondent, has Milburn established any prejudice as a result of counsel's alleged shortcomings.

The United States has submitted an affidavit by Milburn's trial attorney, William Louis Ricker. In the affidavit, Mr. Ricker avers that, on July 18, 2006, he conveyed to his client the government's offer, which allowed his client to plead guilty to conspiracy to distribute 2 pounds of methamphetamine, one firearm count, and possession of marijuana in a penal institution, for a total sentence of 153 months. The day before the July 25, 2006 deadline for acceptance, Mr. Ricker states that he presented to Milburn a letter summarizing the charges against him and the plea offer and that his client rejected the offer and, at that time, did not give him permission to make a counter

23

offer. Mr. Ricker further states that, on December 7, 2006, he received permission from his client to extend a counter offer, whereby Milburn would plead guilty in exchange for a sixty-month sentence, but that the government rebuffed the counter offer that same day. The affiant also states that, prior to these events, he explained to Milburn that convictions on all counts alleged against him would result in a mandatory minimum prison sentence of forty years.

In the letter summarizing the terms of the offer, Mr. Ricker advises Milburn that, based on his investigation of the case, it is more likely than not that a jury would find him guilty of all charges and that, if this is what happened, Milburn would face a mandatory minimum sentence of forty years. Counsel also wrote that the government had indicated that it would return to the Grand Jury and seek to add a new charge for possession of marijuana in a penal institution. The letter additionally informed advised Milburn that the decision as to whether to go to trial or to plead guilty was his alone. Despite Mr. Ricker's advice, Milburn indicated in writing at the bottom of page 2 of the letter that he wanted to go to trial.

A defendant has a Sixth Amendment right to counsel, including effective assistance from that counsel, during the plea-bargaining process. *Lafler v. Cooper*, 132 S Ct. 1376, 1385 (2012) ("The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice."). In the rejected plea bargain context, prejudice requires a petitioner to show that the plea offer would have been presented to the Court (i.e., that he would have accepted the offer and that it would not have been withdrawn), that the Court would have accepted it, and that the conviction and/or sentence, under the offer, would have been less severe than those imposed without the offer. *Id.*

First of all, Milburn has not shown that he rejected the offer because of any erroneous advice given by counsel. Mr. Ricker advised his client that he would likely be convicted at trial, advised him of his minimum mandatory 40-year sentence if he, in fact, were convicted, and told him that he had labored diligently to secure a plea offer of 153 months. Pettitioner was also informed that the 153-month sentence could be significantly reduced for acceptance of responsibility, if Milburn cooperated with the government. Counsel accurately conveyed the government's offer to Milburn within the deadline for its acceptance, first verbally and then in writing. And counsel also correctly advised Milburn that the decision as to whether to plead guilty or stand trial was totally up to him. The Court sees no deficiency of performance based on Mr. Ricker's advice or actions. *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012) (finding a deficient performance where counsel failed to communicate plea offers for a lesser sentence than the maximum or for a guilty plea to a lesser offense before the offers expired).

Furthermore, there has been no prejudice as a result of any alleged deficient performance during the plea negotiations. Petitioner claims that he would have accepted an offer that included a provision agreeing to dismiss the cocaine conspiracy alleged in Count Three, but the plea offer which was extended contained no such a provision.[4] Milburn also indicates that he would have striven to negotiate a 10-year sentence in place of the 153-month sentence provided for in the offer, but again a 10-year sentence was never offered as part of the plea bargain. Thus, petitioner fails on

---

[4] Moreover, in exchange for petitioner's guilty pleas to the methamphetamine conspiracy, a firearm count, and possession of marijuana in a penal institution, the other charges (including the cocaine conspiracy count) were being dismissed. It makes no sense to reject an offer, on the purported basis that it had to include a provision dismissing a charge—a dismissal to which the government has already agreed as part of its offer.

25

the first step, i.e., showing that offer would have been presented to the Court, because Milburn has not shown that he would have accepted the offer which actually was made to him.

As to the counter-offer of 60 months, which petitioner endorsed and permitted counsel to present to the government, that counter-offer was flatly rejected. Counsel has no means of compelling the government to accept a counter-offer which the government does not find to be in its best interest and which it refuses to accept. To comply with the Sixth Amendment, counsel need only be competent, not omnipotent.

To the extent that Milburn's allegation that counsel failed to advise him about the elements of the conspiracy is intended to imply that counsel failed to provide his client with the information on the nature of the charge which would have allowed him to make an informed plea, the Supreme Court has suggested that notice of the nature of a charge does not always require a description of every element of an offense. *Henderson v. Morgan*, 426 U.S. 637, 645 n. 18 (1976); *accord, Bargas v. Burns*, 179 F.3d 1207, 1215 (9th Cir. 1999). At any rate, as the government points out, petitioner was advised of the nature of the charges against him at his arraignment, (Doc. 14).

No relief is due to petitioner with respect to this alleged misstep on the part of his attorney.

f. *Motion to Withdraw* (Doc. 477 at 15-16, Doc. 481 at 10-11)

In this claim, Milburn maintains that there was a breakdown in communications with counsel, contending that they argued constantly, were in conflict concerning the issues, and did not see eye-to-eye, and that this breakdown largely explains counsel's failings during the plea bargaining stage. Milburn further maintains that counsel communicated with and provided copies of court documents to his family, rather than to petitioner himself. While Milburn acknowledges that both

26

counsel and he share fault for the contentious relationship, he insists that only counsel bore a duty to withdraw. Had his retained counsel satisfied his obligation to withdraw from the representation, so Milburn asserts, a new lawyer representing him would have facilitated a plea deal which he would have found acceptable and a different outcome would have resulted.

The United States opposes relief, arguing that the claim is supported by no specific facts from which the Court could conclude that a withdrawal of counsel was necessary. As respondent points out, nowhere in the record, aside from the § 2255 pleadings, is there an indication that Milburn was having these disagreements with his attorney or that he brought to the attention of the Court the supposed attorney/client breakdown in communication.

A petitioner must set forth the facts which support each ground for relief, including claims of ineffective assistance of counsel. *See* Rule 2(b)(2), Rules Governing Section 2255 Proceedings. Without some factual details to flesh out his claim that a breakdown of communication let to ineffective assistance, the allegation is vague and conclusory and does not entitle petitioner to relief. *Post v. Bradshaw*, 621 F.3d 406, 419 (6th Cir. 2010) (absent articulation of factual contentions to support ineffective assistance claim, petitioner has no entitlement to relief); *United States. v. Fisher*, 38 F.3d 1144, 1147 -1148 (10th Cir. 1994) (rejecting claims of ineffective assistance of counsel and declining "to fashion [petitioner's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments"); *Brooks v. United States,* 1988 WL 121255, *1 (6th Cir. Nov. 15, 1988) (§ 2255 arguments concerning, *inter alia*, claims of ineffective assistance, which lacked factual elaboration were properly dismissed).

27

If the claim were not conclusory, where Milburn retained trial counsel and where the claimed attorney deficiencies occurred pretrial, one may ask why Milburn did not simply discharge his attorney and obtain a new one, at which point, trial counsel would have been obligated to file a motion to withdraw? The Court notes that something similar occurred prior to sentencing when trial counsel moved to be relieved from any further representation and to substitute Alexander M. Salerno as counsel of record since Mr. Salerno had moved to be admitted pro hac vice as counsel for Milburn, (Doc. 431). At any rate, the true question, under *Strickland*'s two pronged test, is whether Milburn can demonstrate that he received constitutionally ineffective assistance from his attorney in connection with the omitted motion. Under these conclusory allegations, this showing has not been made.

g. *Motion to Recuse* (Doc. 477 at 28)

Milburn here asserts that counsel should have inquired into a statement made by the Court during the second bond hearing, to wit, that the undersigned mentioned that he knew the government witnesses and their families. Respondent cites to *United States v. Vaught*, 133 Fed. Appx. 229, 233 (6th Cir. 2005), which held that simple acquaintanceship with a witness does not necessitate recusal, as support for his argument that alleged familiarity with unidentified witnesses does not, in and of itself, create an appearance of impropriety or result in bias.

Under 28 U. S. C. § 455, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.§ 455(a). This provision has been read as requiring recusal "if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Johnson v. Mitchell,* 585 F.3d 923, 945 (6th Cir. 2009) (internal

quotation marks and citation omitted); *Roberts v. Bailar,* 625 F.2d 125, 129 (6th Cir. 1980) (same). The government witnesses and their families with whom the Court allegedly is acquainted have not been identified and no details surrounding those acquaintanceships have been alleged. There must be a sufficient factual basis to support recusal. *See United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983) (the facts must demonstrate that the judge's cast of mind incompatible with unbiased judgment). The bare allegations offered here would have been inadequate to justify a recusal. *Cf. Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) ("There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is.").

Because a motion to recuse, under these facts, would not have been granted, Milburn has sustained no prejudice as a result of counsel's failure to so move. *Strickland*, 466 U.S. at 692 (finding that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution").

h. *Frivolous/ Irrelevant Motions* (Doc. 477 at 16-19, Doc. 481 at 16-18)

The next claim involves contentions that counsel filed irrelevant or frivolous motions. The United States counters that Milburn has failed to explain how he was prejudiced by the alleged errors and that, indeed, absent those errors, he would still have been found guilty and would have received a 480-month sentence. Furthermore, respondent argues that the fact that counsel's pretrial motions were unsuccessful does not mean that they were frivolous.

i. Motion to Dismiss (Venue)

The first such alleged motion was a motion to dismiss the indictment for lack of venue. Petitioner argues that the law on a continuing conspiracy was very clear and that the filing of such

29

a motion was a waste of the defense's time, which would have better spent in preparation for trial. Milburn concludes that counsel's failure to object to the Report and Recommendation, issued by the magistrate judge, that the motion be denied verified that "there really was no objection to be made because it was unsupported by clear law," (Doc. 477 at 16).

Trial counsel filed a motion to dismiss two counts of the indictment for lack of venue, arguing that the counts arising from Milburn's arrest in Georgia could not be prosecuted in the Eastern District of Tennessee, as the offense was committed in Georgia, (Doc. 205). The Court held a hearing on the motion and, at the end of the hearing, took the motion under advisement, pending the receipt of briefs on two Supreme Court cases involving the venue question, which the Court requested the parties to file, (Doc. 333 and Doc. 429, Motion Hr'g T. at 8-9). Only after submission and consideration of the briefs, oral argument at the hearing, and the issues set forth in the motion and responses, did the Court conclude that venue was appropriate in this district and deny the motion to dismiss. Venue was not a frivolous issue, as evidenced by the description of the court proceedings, and the outcome of the motion, by no means, was as clear cut as Milburn now alleges.

Counsel's filing of the motion to dismiss did not fall below a reasonable professional standard, as there was a sound basis to make this argument and as "objections to defects in venue are usually waived if not asserted before trial." *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005). Indeed, had counsel failed to file the motion and had venue not been established at trial, Milburn could then assert that counsel's omission constituted ineffective assistance. *See Cornell v. Kirkpatrick*, 665 F.3d 369 (2d Cir. 2011) (finding ineffective assistance where counsel failed to object to venue and where venue for a rape offense was improper); *cf. United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984) ("If the government does not establish venue and the defendant objects

30

at trial, then an appellate court must reverse the conviction."). Nor was there any prejudice, since there is no reasonable probability that, but for counsel's claimed error in filing the motion, petitioner would not have been convicted of the charges or would not have faced the same prison sentence which was imposed.

### ii. Motions to Supress Evidence

Milburn takes issue with counsel's decision to file a motion to suppress evidence obtained in a search of petitioner's residence and a motion to suppress evidence seized from a search of a Georgia hotel room. Milburn contends that the first motion was not well-drafted, as it had to be construed in accordance with the supporting memorandum, and that the second motion was ill conceived because petitioner lacked standing to challenge evidence seized from a hotel room that he did not rent, which was located in a hotel that he did not own. Petitioner once again asserts that filing these motions was a waste of the defense's time and, essentially, of the money petitioner spent to obtain counsel's services.

Though the suppression motions were unsuccessful, that does not mean that counsel gave Milburn ineffective assistance by making the decision to file them. Had counsel not objected to the searches, Milburn would have forfeited that argument on appeal, had counsel chosen to raise the Fourth Amendment issues in the Sixth Circuit. *United States v. Crismon*, 905 F.2d 966, 969 (6th Cir.1990)("[W]e hold that we are categorically without jurisdiction to hear appeals of suppression issues raised for the first time on appeal."). As *Strickland* instructs, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorney would not defend any particular client the same way." *Strickland*, 466 U.S. at 689. But even if counsel's

31

performance in this regard was somehow subpar, Milburn has not alleged that he sustained prejudice thereby. "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). Absent some showing of prejudice, counsel's claimed errors of judgment did not violate Milburn's right to receive reasonably effective assistance of counsel.

### iii. Various Other Motions

Petitioner has filed a catch-all claim, referring the Court to docket numbers of the motions which were filed in his criminal case for the Court to examine the motions to determine whether, by filing them, counsel rendered ineffective assistance. In an order entered by the magistrate judge on November 7, 2006, some of the questioned motions were denied as irrelevant, but only after the government responded to the motions and indicated that it did not intend to introduce the challenged evidence, which included audio tapes, video tapes, a co-defendant's statements, detention center telephone calls, a Mr. Delguerico's telephone records, and March 1, 2005 tape, (Doc. 335). Other motions were denied on the merits.

Once again, petitioner has tied the success or lack thereof of motions to suppress with the rendering of ineffective assistance of counsel. None of these motions were denied as frivolous, as indeed, they were not and cannot be so characterized. Aside from the purported waste of his money and counsel's time, which is not a relevant factor in an application of *Strickland*'s second-component analysis, Milburn has not complained of any specific, recognizable detriment to his defense from his attorney's decision to file the suppression motions. Suffice it to say, that without

32

some showing of ensuing prejudice from the filing of those motions, which has not been alleged, this claim has no merit.

i. *Failure to Interview/Investigate Witnesses & Failure to Hire a Private Investigator* (Doc. 477 at 19-27, Doc. 481 at 11-13)

Milburn asserts that counsel failed to conduct interviews with Jeremy Scott, Amy Hillhouse, Brandy Stephens, Christopher Lyons, an unidentified coin shop owner, Leila Milburn, Leroy Gray, Broker Lesley McCrackin, Kyle Moore, Frankie Moore, Bennie McGhee, Frank Dishner, Andrew Hensley, and Jimmy Berry, or hire a private investigator to do so. Milburn sets forth the substance of the supposed information or testimony these proposed witnesses variously would have given, i.e., that petitioner did not have an association with a Georgia drug-dealing enterprise; that he intended to travel to Georgia to buy coins (and did so), not to buy drugs; that he was a coin and gun collector; that he had legitimate sources of cash; and that, insofar as they saw, no receiving, processing, storage, or selling of drugs took place on Milburn's dairy farm.

There are several flaws with the proposed testimony, the first of which is that Milburn has not provided any independent evidence as to what these witnesses would have said, had they been interviewed or called to testify. As the United States suggests in its response, petitioner has not submitted affidavits from any of these potential witnesses to indicate that they actually would have testified as he suggests. Thus, Milburn's claim is speculative and speculation alone is insufficient to show prejudice, as conjecture does not undermine confidence in the outcome. *See Sanders v. Trickey*, 875 F.2d 204, 210 (8th Cir. 1989) (a § 2255 movant who offered no witness affidavit or other independent support failed to show prejudice, as required by *Strickland*).

33

Secondly, a number of these proposed witnesses were arrested at the Georgia hotel and criminally charged by state authorities, as participants in a drug-deal. Nothing has been submitted which suggests that the attorneys representing the many witnesses in the Georgia criminal proceedings would have permitted Milburn's counsel or investigator, had he hired one, to interview their clients. Moreover, one listed witness is an attorney who represented one of the Georgia defendants. Petitioner does not indicate how he would have persuaded this witness to divulge any information concerning his client or the events leading up to or surrounding her arrest, given the attorney/client privilege relating to such confidential communications.

Third, none of the supposed information these witnesses would have imparted is truly exculpatory. Even if those witnesses were viewed as credible by the jury, the jury could have believed that petitioner was a coin collector who traveled to Georgia to obtain coins and also concluded that he planned to buy drugs once there (and the evidence showed that he did so intend); that he was a gun collector, who also used weapons during a drug-trafficking offense; that he had legitimate sources of money and that the money which came from those or other sources was used to purchase illegal substances; and that his employees did not observe any criminal wrongdoing on the dairy farm, which nonetheless occurred.

Furthermore, petitioner has not demonstrated that, had these witnesses been interviewed and had they also given the testimony he insists they would have given, it is reasonably probable that he would have been acquitted, given the wealth of evidence, including testimony of his co-conspirators and law enforcement agents, which supported his guilt on the drug-trafficking and firearms charges. *See Strickland*, 466 U.S. at 690, 694 (prejudice established by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been

34

different"); *McAuliffe v. United States*, 2013 WL 452421, *4 (6th Cir. Feb. 7, 2013) ("The likelihood of a different result must be substantial, not just conceivable.") (quoting *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011).

Without the requisite showing of prejudice, counsel's purported failings do not justify granting Milburn any relief.

## 2. Trial Errors

a. *Failure to Request Transcriptions* (Doc. 477 at 28-31, Doc. 481 at 14-15)

In the first claim in this category, Milburn cites as attorney error, trial counsel's failure to have transcribed the voir dire, bench conferences, and audio tapes submitted as evidence and appellate counsel's failure to present this issue on appeal. Petitioner contends that the transcript of the voir dire would show that counsel failed to question potential jurors on bias and their ability to be fair in weighing the evidence—an inquiry made necessary by the inflammatory pretrial publicity garnered by his federal prosecution. Milburn reiterates his previous allegations about bias on the part of Juror Yance and also maintains that the lack of such transcripts have hindered him in raising claims of ineffective assistance in his § 2255 motion.

In response, the United States correctly argues that the claim lacks merit because, under 28 U.S.C. § 753(b), "all proceedings in criminal cases had in open court" must be recorded and because transcripts of those proceedings are available upon request, though a court reporter charges fees if

a party orders a transcript. *Id.*[5] Thus, because those proceedings were required to be recorded, counsel was not incompetent for failing to move to have the recordings made.

Furthermore, there has been no showing of prejudice. First of all, petitioner's allegations concerning inflammatory publicity were addressed and found wanting earlier in this opinion. *See supra*, Part III.B.1.c, pp. 20-24. Secondly, Milburn has not demonstrated that the aforementioned transcripts, had they been ordered, contain any information which would demonstrate a substantial likelihood of a different result at his trial or on appeal. *Harrington*, 131 S.Ct. At 792. Unless counsel's claimed missteps result in prejudice to the defense, petitioner has no viable claim of ineffective assistance.

b. *Failure to Object to Prosecutorial Misconduct (Opening Statement)* (Doc. 477 at 31, Doc. 481 at 26)

The Court has already found that the prosecutor's comment, made during his opening statement (that he represented the people of the Eastern District of Tennessee), was not improper; thus, counsel did not render a prejudicial performance for failing to object to it.

c. *Failure to Object to Prosecutorial Misconduct (Fraud on the Court/Jury)* (Doc. 477 at 31, Doc. 481 at 16)

The Court determined earlier that petitioner has not shown that testimony offered by co-conspirator Saults was not actually false; therefore, there was no misconduct on the part of the prosecutor to which counsel should have objected. Counsel is not required to make a groundless

---

[5] A transcript is available free of charge to an indigent prisoner upon a showing of specific need, *see* 28 U.S.C. § 753, but this does not include a transcript to conduct a fishing expedition for potential issues to raise in a § 2255 motion. *See United States v. Fleming*, 1999 WL 107956 (6th Cir. Feb. 9, 1999).)

objection, *Krist*, 804 F.2d at 946-47, and cannot be ineffective for failing to make such an objection. *Greer*, 264 F.3d at 676.

    d. *Failure to Impeach Cobb County Officers* (Doc. 477 at 34-36, Doc. 481 at 16-17)

Milburn claims that Cobb County police officers testified at trial as to a statement made to them about a "drug deal date," but that the testimony varied from what was contained in the police report detailing the Georgia drug-bust. According to petitioner, the contents of the police report indicate that the deal had already taken place when the officers entered the hotel room where Milburn was sitting, but the officers did not find a pound of methamphetamine during the search of the hotel room or of the occupants. Moreover, the money purportedly to be used to purchase the drugs was still in petitioner's (or co-defendant Troy Ward's) possession which, according to Milburn, shows that there was no drug-dealing because (inferentially) no drugs were purchased and no money had changed hands.

The list of exhibits does not indicate that a police report from Cobb County, Georgia was introduced; therefore, even if it was disclosed to Milburn during discovery, the Court has no way of knowing its contents. Be that as it may, Milburn has not cited to any factual distinctions between the officers' testimony at trial and the contents of the police report, but merely concludes, based on inferences he himself has drawn from certain alleged facts in the police report, that the testimony of the officers at trial varied from the report. It is well settled that conclusory contentions provide no basis for § 2255 relief. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (finding that "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal").

Furthermore, if the assertions were not conclusory, the federal drug charge which emerged from Milburn's Georgia conduct was an *attempt* to possess with intent to distribute methamphetamine (Count Four),[6] and this offense does not require that a criminal accused do "everything except the last act necessary to complete the crime." *See* Sixth Circuit Pattern Jury Instructions-Criminal, § 501(1)(C). So long as the elements of attempt were satisfied, it matters not whether the actual exchange of money for drugs had been accomplished. Thus, this proposed avenue of impeachment of the officers would not have been relevant and, given the strength of the prosecution's case against him, Milburn has not demonstrated a substantial likelihood that the outcome of the trial would have been different, had counsel engaged in this line of cross-examination. *See Turner v. United States*, 699 F.3d 578, 584 -585 (1st Cir. 2012) (agreeing that " *Strickland* prejudice was not shown, especially given the government's very strong evidence of guilt").

e. *Other Failings at Trial* (Doc. 477 at 36-38, Doc. 481 at 17-18)

i. *Opening Statement*: In this claim, Milburn first alleges that counsel asked the jury to listen to his cross-examination of the witnesses and weigh the evidence, but did not talk about defense or expert witnesses who would poke holes in the government's case. Petitioner claims that counsel omitted any references to defense witnesses because he had no such witnesses ready to testify, did not subpoena any witnesses, and did not ask the Court to issue such subpoenas.

---

[6] Count Five was the firearm charge, which the instant allegations leave untouched since they involve only the drug charge. This is wise because the evidence shows that two loaded firearms were discovered on Milburn's person (in his pants pocket and his boot) and one in a cooler underneath the table where he was sitting.

Whether to make or forego an opening statement is considered to be a matter of trial strategy, subject to the usual proof, under *Strickland*, that counsel's decision constituted a deficiency of performance, which prejudiced the defense. *Moss v. Hofbauer*, 286 F.3d 851, 863 (6th Cir. 2002). And remarks made during an opening statement can likewise be tactical decisions. *United States v. Recendiz*, 557 F.3d 511, 532 (7th Cir. 2009). "[T]actical decisions must be particularly egregious before they will provide a basis for relief." *United States v. Friedman*, 1993 WL 386797, *3 (6th Cir. Sept. 30, 1993) (citing *Martin v. Rose,* 744 F.2d 1245, 1249 (6th Cir. 1984)).

In this case, petitioner has not overcome the presumption that counsel's tactical decision (i.e., to omit from his opening statement a comment about defense and expert witnesses) "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. In view of this presumption, Milburn has failed to show that counsel rendered any sub-par performance in connection with his opening statement. Nor has Milburn shown any prejudice since counsel did not promise, in that statement, to present any witnesses, and since there was no detriment to petitioner when counsel failed to produce such witnesses.

### ii. Failure to Hire Expert Witness/ Subpoena Witnesses

In the first claim in this category, Milburn alleges that he wanted an expert to testify as to the effects of usage of consistent and large amounts of methamphetamine on the user, for the purpose of attacking the credibility of prosecution witnesses who were users who fell within this description.

However, there was no need to call an expert in methamphetamine use, when counsel could accomplish the same impeachment goal by cross-examining and undercutting the credibility of witnesses who were methamphetamine users and who enjoyed, so Milburn asserts, "clear, vivid

memories" when offering damaging testimony against him, but whose memories became "foggy"when it came to testifying about their own foibles, (Doc. 481 at 18). *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (failure to hire an expert can be ineffective assistance depending on whether an expert was required or whether cross-examination of prosecution's expert or other witness is sufficient). Also, petitioner has "not introduced affidavits or any other evidence establishing what [an expert] would have said" to show prejudice stemming from the "modest difference between the jury hearing th[e] theory of defense through cross-examination and hearing through the mouth of another expert." *Id.* at 810.

Next, petitioner finds fault with counsel's failure to subpoena, call, or have unidentified witnesses ready to testify at trial, but this claim suffers from the same defect as similar claims discussed earlier—a lack of affidavits or other evidence to establish to what those witnesses would have testified at trial.

A failure to show prejudice defeats the claims in this category, and no relief is available, absent a demonstration of a prejudicial performance.

### iii. Failure to Call Petitioner to Testify

In this claim, Milburn maintains that he insisted on testifying, knowing that the jury was waiting for him to take the stand, but that counsel advised him against doing so due to his credibility having been ruined by the proof on Count Eleven which had been presented at trial and which revealed that he was in jail. Petitioner maintains that he was ill-advised in this regard, but acknowledges that he accepted counsel's advice.

The United States argues that Milburn has not shown a constitutional violation, since petitioner does not allege that counsel prevented him from testifying, but admits that he opted to follow the advice, and since no prejudice has been shown to have resulted from counsel's claimed shortcoming.

"[A] criminal defendant has a fundamental constitutional right to testify on his own behalf." *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir.1997) (citing *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987)). It is up to a defendant as to whether to exercise his personal right to testify; however, when a defense attorney makes a strategic decision not to have the criminal accused testify, defendant's assent is presumed. *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000); *see also Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2000) ("A defendant is presumed to have waived his right to testify unless the record contains evidence indicating otherwise.") (citing *Webber*).

A criminal accused is free to repudiate his attorney's advice; assert his right to testify by informing the trial court that he wishes to so do; or fire his attorney—but, at a minimum, he must bring to the trial court's attention that he and counsel fundamentally disagree as to whether he should testify. *Webber*, 208 F.3d at 551. When a defendant does none of these things and does not testify, waiver of his right to testify is inferred. *Id.* As the Sixth Circuit reasoned, "[a] contrary rule would require courts to hold an evidentiary hearing any time a defendant who did not testify at trial filed an after-the-fact statement saying that he wanted to testify but was prevented from doing so." *Hodge*, 579 F.3d at 639.

In this case, Milburn's assent to waive his right to testify need not be inferred because Milburn explicitly states that he "took" counsel's advice not to testify. But even if the questioned

advice was wrong at the time it was given—recall that hindsight cannot be used to evaluate counsel's conduct, *see Strickland*, 466 U.S. at 690—petitioner has not established that, but for counsel's claimed poor advice, there is a reasonable probability that result of the proceeding would have been different. *Id.* at 694.

Milburn's failure to demonstrate a prejudicial performance derails this claim of ineffective assistance.

### iv. Chain of Custody Error (Doc. 477 at 40, Doc. 481 at 19-20)

This claim rests on Milburn's contentions that the chain of custody was broken on the laboratory tests of the drugs, based on the lack of evidence as to the identity of the individual(s) who had received the drugs from the police and the method whereby the drugs were delivered to the laboratory for testing. The lack of identification of those person(s) and how the drugs were actually passed to the lab suggests, so petitioner argues, that the drugs were possibly tampered with or replaced with fabricated drugs and that ½ ounce of methamphetamine has disappeared.

Beyond his mere suspicions, Milburn offers no specific allegations of fact to support his theory that the drugs seized by the police were tampered with before the lab results were introduced at trial. As noted, conclusory contentions will not sustain § 2255 relief. *Blackledge*, 431 U.S. at 74.

### v. Failure to Object to Testimony (Doc. 477 at 41-45, Doc. 481 at 20-22)

Milburn next asserts that trial testimony given by three officers was highly prejudicial, irrelevant, and unsubstantiated and should have been objected to by counsel.

Petitioner's cites, as counsel's first misstep, his failure to challenge Agent Templeton's testimony, during which he explained the difference between methamphetamine and crystal

42

methamphetamine and stated that the type of methamphetamine involved in the drug deal at the service station was Mexican-produced crystal methamphetamine.

The Court has reviewed the questioned testimony and finds that explanation was pertinent to the jury's understanding of documents and papers found in Milburn's truck when he was arrested. Officer Templeton's statement identifying Mexico as the location of the production of methamphetamine was in response to the government's question as to the type of methamphetamine Templeton had set up through an informant to sell to petitioner. This information was relevant and substantiated since Templeton testified that he was the primary case agent on the investigation into the drug conspiracy and had staged the methamphetamine deal and since, given his role in the investigation, he would have known the type of methamphetamine designated to be sold to petitioner.

Next, Milburn maintains that testimony given by by Lt. Eddie Tweed and U.S. Marshal Vaught was highly prejudicial. Though petitioner was charged in Count Eleven with possession of marijuana as a federal inmate on May 23, 2006, Officer Tweed testified that at the trial in December, 2006, that Milburn was still in the Greene County Detention Center and Marshal Vaught testified that petitioner had been in that facility since his case was remanded by the Sixth Circuit. Petitioner argues that this testimony, showing that he remained an inmate over 6 months after the date charged in Count Eleven, did not constitute proof of one of the elements of Count Eleven and, therefore, was irrelevant and prejudicial, as it destroyed his defense and eviscerated his right to be presumed innocent until proved guilty.

The United States opposes relief on the claim on the bases that the challenged testimony was necessary to establish the element that Milburn was a federal inmate and that his contention that it stripped him of the presumption of innocence is not to say that it was unduly prejudicial.

The Court agrees with respondent, since proof of Milburn's status as a federal inmate was essential to establish the "federal inmate" element of Count Eleven. Evidence that Milburn remained in jail some six months after the date the government needed to establish that he, in fact, was confined in the jail as a inmate was not relevant to meet the government's burden of proof. However, its admission was inconsequential, since proof that he was a federal inmate necessarily was already before the jury. Therefore, the testimony was not "substantially outweighed by the danger of unfair prejudice," *see* Fed. R. Evid. 403, and counsel's failure to object to it does not constitute ineffective assistance.

vi. Failure to Object to Spillover Evidence (Doc. 477 at 45-46; Doc. 481 at 22)

Milburn charges, in this claim, that his attorney failed to object to spillover evidence which occurred due to prosecuting the offenses out of chronological order. In view of the Court's prior finding that the order in which the offenses were indicted and tried to the jury did not result in any violation of petitioner's right to due process, *supra*, Part III.A.3, counsel did not give ineffective assistance by failing to raise this issue. *See Krist*, 804 F.2d at 946-47; *Greer*, 264 F.3d at 676.

vi. Failure to Object to Jury Instruction on Count Eleven (Doc. 477 at 46-48; Doc. 481 at 24)

The next claimed attorney error was the failure to object to an instruction to the jury. Milburn has no objection to the instruction which defined the term "prison" as a "federal

44

correctional, detention, or penal facility or any prison, institution or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General," (Doc. 430, T. Tr. at 429-30). It is the additional instruction that "[t]he Greene County Jail is such a facility," which he argues is impermissible, (*id.* at 430).

Respondent argues that the instruction was not improper since whether a facility meets the statutory definition of a prison is a legal conclusion which was properly determined by the Court and since the Court's instruction did not invade the jury's province to decide whether Milburn was an 'inmate' at the Greene County jail, who made, possessed, or obtained a prohibited object, as set forth in the statute of conviction. *See* 18 U.S.C. § 1791(a)(2).

The United States has the better argument. Whether the location where the possession of marijuana allegedly occurred was a federal prison was an issue of law, whereas whether Milburn was an inmate in that location and whether he possessed marijuana as charged in the indictment were facts to be determined by the jury. *See Sparf v. United States*, 156 U.S. 51, 102-97 (1895)("[I]t [i]s the duty of the court to expound the law, and that of the jury to apply the law as thus declared to the facts as ascertained by them."); *see also United States v. Gonzalez*, 2001 WL 1580233, *1 (S.D.N.Y. Dec. 12, 2001) (instructing, in a § 1791(a)(2) prosecution, the jury that it must determine whether defendant was an inmate in a federal prison and that the "MCC is a federal prison") .

    vii. <u>Failure to Impeach Troy Ward</u> (Doc. 477 at 48-50, 52; Doc. 481 at 27)

These alleged attorney shortcomings center on counsel's failure to investigate and uncover impeachment evidence. Petitioner claims that there was a difference of ½ ounce between the the amount of methamphetamine detailed in discovery materials (i.e., police reports and inventories of

the Cobb County hotel room and the individuals who were arrested) and the amount to which a prosecution witness, co-defendant Ward, testified. Ward's testimony, Milburn also argues, was so inconsistent on the purchase price for methamphetamine as to be utterly ridiculous. For example, Ward testified that he paid $750 for an ounce of methamphetamine and also that he paid the same price for ½ ounce. Furthermore, according to petitioner, Ward's testimony that Milburn was driving to Georgia to buy a pound of methamphetamine for $12,000, which would correlate to the $750 per ounce, is false as it is a known fact in business transactions that the more you buy of a product, the cheaper the product becomes.

A review of the trial transcript shows that the subjects raised in counsel's cross-examination and re-cross-examination of Ward consisted, essentially, of the salient points which Milburn now claims should have been raised— questions regarding the amount and purchase price of the methamphetamine involved in the drug-deal in Georgia, as well as the ½ ounce sample which was brought to the hotel room to convince the buyers of its quality (Doc. 430, 283-295). Counsel also strove to undermine Ward's credibility by questioning him about his Georgia conviction and his ability, as a heavy user of methamphetamine, to remember accurately the events surrounding the Georgia drug dealing to which he was testifying.

Milburn next maintains that Ward's telephone records should have been subpoenaed because they would have shown that he made no calls from Georgia to Milburn. There is no evidence, beyond Milburn's bald allegation, that Ward's phone records would have shown what petitioner claims they would have shown or, as the government argues, would have contradicted Ward's testimony. The Court will not second guess counsel's tactical decisions in this regard and it is not truly explained—and by no means is it clear—how counsel's use of the information now proposed

46

would have further impeached Ward or aided the defense. Since Milburn has failed to show either a deficient performance or prejudice as a result of counsel's cross-examination of the witness, this claim entitles him to no relief.

viii. Failure to Object to Firearms Charges (Doc. 481 at 31)

The last claim in the trial-error arena involves counsel's failure to challenge two firearms counts. Count Five charged that petitioner carried a firearm during and in relation to the crimes charged in Counts Two and Four; Count Nine alleged that he carried a firearm during and in relation to the offenses set forth in Counts Two and Eight. As the Court understands petitioner's reasoning, since the firearm underlying the charge in Count Five was tied to his arrest in Georgia on September 8, 2004 (and was seized on that date), whereas the weapon involved in Count 9 was associated with his December, 2005 arrest at the Tennessee service station, he could not have been charged and convicted with carrying both firearms during the Count Two offense.

The United States correctly points out, in its response, that Count Two was a methamphetamine conspiracy charge, which embraced all of Milburn's attempts to obtain methamphetamine, including such attempts in Georgia in September, 2004, and in Tennessee on December, 2005. Thus, Milburn was properly charged in Counts Five and Nine with carrying a firearm during and in relation to the offense in Count Two and his conviction on those counts was legally sound. Furthermore, even if Counts Five and Nine had contained no reference to Count Two, Milburn would still have been properly convicted of both Counts Five and Nine, since the former count was also tied to the crime charged in Count Four and the latter count to the offense alleged in Count Eight.

47

A lawyer is not required to raise futile objections in order to avert a claim of ineffective assistance. *See McQueen v. Scroggy,* 99 F.3d 1302, 1328 (6th Cir. 1996), *cert. denied,* 520 U.S. 1257 (1997). Milburn has not established a prejudicial performance on the part of his attorney.

## 3. **Sentencing and Appellate Errors**

Milburn submits that his new attorney, who was substituted for trial counsel prior to sentencing, was ineffective in all issues raised at sentencing and on appeal, as those issues which were offered were frivolous, (Doc. 477 at 50-52; Doc. 481 at 28). What counsel should have done, so argues petitioner, is to advise him and his family to waive an appeal altogether and, instead, file a motion to vacate containing the claims which have been advanced in Milburn's *pro se* § 2255 motion. In any event, but for counsel's alleged errors, it is Milburn's contention that the outcome of the appeal would have been different.

Beyond his naked assertions, Milburn offers no specific allegations of fact to show that counsel performed deficiently. *Strickland,* 466 U.S. at 698 (petitioner must "identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment, ineffective assistance"). Nor has he shown any prejudice, notwithstanding his factually unadorned contention that the outcome of the appeal would have been different had counsel raised the claims raised in this motion and not the ones he actually raised. Thus, the claim is conclusory; conclusory claims will not support § 2255 relief. *Blackledge,* 431 U.S. at 74.

Petitioner's final claim of ineffective assistance is that all the errors of all of his attorneys, considered cumulatively, rendered his trial fundamentally unfair. However, since none of the errors individually have been found sufficient to warrant relief, those errors cannot be accumulated to show

that, as a result of "the overall picture of the representation," (Doc. 481 at 27), petitioner suffered prejudice, such that his trial cannot be relied upon to have produced a just result. *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) (finding that "the accumulation of non-errors cannot collectively amount to a violation of due process" ).

## C. The § 924(c) Sentence

Relying on the Sixth Circuit's decision in *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010), Milburn asserts, as his final claim for § 2255 relief, that he should not have received mandatory consecutive sentences of 60 months and 300 months for his firearms convictions in Counts Five and Nine respectively. Unfortunately for petitioner, the Supreme Court vacated the cited opinion and remanded it in light of *Abbott v. United States*, 562 U.S. __, 131 S. Ct. 18 (2010), *see United States v. Almany*, 131 S. Ct. 637 (2010), and Almany's § 924(c) sentence was restored on remand. *United States v. Almany*, 626 F.3d 901 (6th Cir. 2010). It is now clear that imposition of mandatory consecutive sentences may be imposed for possession of a firearm in drug trafficking offenses, even if a defendant receives a higher minimum sentence for separate counts of convictions.

## IV. Conclusion

The claims of ineffective assistance raised in this § 2255 motion are procedurally defaulted, factually insufficient, or meritless. Therefore, the Court will **DENY** the motion.

## V. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant

has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner, whose claims have been rejected on the merits, satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner, whose claims have been rejected on a procedural basis, must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.

**ENTER**:

LEON JORDAN
UNITED STATES DISTRICT JUDGE